**GILROY–SIMS AND ASSOCIATES, a partnership, Thomas R. Green, Michael M. Starr and Starr Service and Parking Co., Inc., a Missouri corporation, Plaintiffs-Appellants,**

**v.**

**CITY OF ST. LOUIS, Missouri, the Downtown St. Louis Business District, a political subdivision of the State of Missouri, and the Board of Election Commissioners of the City of St. Louis, Defendants-Respondents.**

No. 49370.

Missouri Court of Appeals, Eastern District, Division One.

Sept. 10, 1985.

Peter W. Herzog, Jr., Herzog and Bur-roughs, St. Louis, for plaintiffs-appellants.

James J. Wilson, City Counselor, Julian L. Bush, Asst. City Counselor, St. Louis, for defendants-respondents.

CARL R. GAERTNER, Judge.

In December of 1983, the Board of Alder-men of the City of St. Louis adopted Board Bill 588, which was signed by St. Louis Mayor Vincent Schoemehl on December 7, 1983. Board Bill 588 established The Downtown St. Louis Business District and established a tax rate and initial levy for the district. Plaintiffs, Gilroy-Sims and Associates, Thomas R. Green, Michael M. Starr and Starr Service and Parking Co.,

Inc., filed suit against defendants City of St. Louis and The Downtown St. Louis Business District, seeking to enjoin collection of the tax since it had not been submitted for the approval of voters as required by Mo. Const. Art. X, § 22.

Thereafter, on June 29, 1984, Board Bill 148 was introduced in the Board of Aldermen. This Bill provided for submitting, to the resident voters in the Downtown St. Louis Business District, a proposition approving the initial tax rate and levy at the election scheduled for November 6, 1984. The Bill was assigned to the Board's Ways and Means Committee, chaired by Alderwoman Geraldine Osborn. On August 16, 1984, Mrs. Osborn arranged for a meeting to be held on Board Bill 148 at the conclusion of the Board's regularly scheduled public hearing on August 21, 1984. The chairperson sought to supplement the notice for the August 21 meeting with notice of the meeting on Board Bill 148, but through a clerical mishap, notice of the additional business was not added. Since Mrs. Osborn was aware that plaintiffs opposed Board Bill 148, she contacted the president of the downtown chamber of commerce, Mr. Edward Ruesing, and asked him to advise plaintiffs of the meeting set for August 21.

Mr. Ruesing quickly spread word of the meeting, but exactly when and how particular plaintiffs received notice of the Board Bill 148 meeting is unclear. In any event, counsel for defendants has stipulated that the Board of Aldermen's public notice rules had been violated in this instance.

Committee Rules 23 and 24 of the Board of Aldermen provide:

### ALL MEETINGS AND HEARINGS TO BE PUBLIC

*Rule* 23.—No bill shall be reported out of any committee or considered by the Board of Aldermen unless and until a hearing or meeting has been held on said bill by the committee to which it was referred. Any member of the Board of Aldermen or the public may attend any

meeting or hearing of any committee of the Board of Aldermen; and no committee meeting or hearing shall be closed to the public except as allowed by the Laws of the State of Missouri. Any member of the Board of Aldermen may examine any document or examine any witness at a committee meeting or hearing with the approval of the committee chairman or a majority of the committee members present at the meeting or hearing.

## NOTICE AND AGENDA TO BE PUBLISHED

*Rule 24.*—An announcement of the date, place, and time of any public hearings or meetings held by any committee of the Board of Aldermen at which a Board Bill will be discussed or studied shall be published as required by law. The same shall be posted at least two days prior to said meeting or hearing, on the bulletin board of the Board of Aldermen shall contain a brief description of the contents of each bill to be heeard (sic) in the committee meeting as called.

The staff shall prepare and mail to all the Aldermen before the close of the business day on each Friday a composite notice of all meetings of all committees that have been called to meet in the forthcoming week. Said composite notice shall contain the date, place and times of such meeting, together with the Board Bill numbers and sponsors of the bills that are scheduled to be considered by each committee. Additionally the composite notice shall contain a brief description of each bill to be considered by each committee and shall as nearly as possible conform to the posted notice of hearings posted on the bulleting (sic) board of the Board of Aldermen as called for in this rule. Board Bills not posted to be considered by a regularly scheduled meeting of a committee shall not be considered at said meeting.

As scheduled, the Board of Aldermen held a meeting on Board Bill 148 on August 21, 1984. Mr. Paul Seele, an attorney representing plaintiffs, appeared at the meeting and objected that the Board had not complied with its own notice rules. Nevertheless, the Ways and Means Committee approved Board Bill 148 and shortly thereafter, the Bill was approved by the full Board. Mayor Schoemehl signed the Bill on September 4, 1984. On November 6 of that year, Board Bill 148 was on the ballot at the General Election, and was approved by the voters.

Plaintiffs appeal from the circuit court's judgment of September 26, 1984, refusing to hold Board Bill 148 "void, invalid and of no effect." We dismiss the appeal because the case is moot.

■ With regard to justiciability, a case is moot if a judgment rendered has no practical effect upon an existent controversy. *Grogan v. Hays*, 639 S.W.2d 875, 877 (Mo.App.1982). Even a case vital at inception of the appeal may be mooted by an intervenient event which so alters the position of the parties that any judgment rendered becomes merely a hypothetical opinion. *Id.; State ex rel. Hooker v. City of St. Charles*, 668 S.W.2d 641, 643 (Mo.App. 1984). "[A]ppellate courts of this state do not sit as moot courts to determine speculative issues for the benefit of some other case in judgment at some other time." *Carrothers v. Beal*, 565 S.W.2d 807, 808 (Mo.App.1978).

■ Plaintiffs' sole contention is that the Board of Aldermen's failure to follow its own rules of procedure renders the Board Bill—as well as the ensuing election—a nullity. Plaintiffs initially sought to enjoin the Board from enforcing Board Bill 148, and to enjoin the holding of any election. But the election has already been held, and this court cannot "turn back the clock and order not to be done that which has already occurred." *Perseverance Common School Dist. No. 90 v. Honey*, 367 S.W.2d 243, 248 (Mo.App.1963).

A somewhat similar situation was present in *Raymore-Peculiar Reorganized School Dist. v. Stewart*, 424 S.W.2d 752 (Mo.App.1968). In *Stewart*, an election sought to be enjoined by the plaintiff was

held shortly after plaintiff's prayer was denied. The court of appeals held the case was moot.

The subject matter of the instant suit as it was originally brought is no longer in active controversy. The election, the holding of which plaintiff sought to restrain and enjoin, has been held. We cannot undo what has already been done. We are powerless to correct any wrongs or misfortunes plaintiff may have suffered resulting from the election. It is too late to lock the barn door after the horse has been stolen. The matter is moot and the appeal must be dismissed.

424 S.W.2d at 754.

Likewise, we are powerless here to prevent from occurring that which has already occurred. The case is moot.

The appeal is dismissed.[1]

PUDLOWSKI, P.J., and KAROHL, J., concur.

1. Were we to address the merits of this case, the result would be no different. Noncompliance with internal procedural rules, as opposed to requirements of statutes, ordinances, charters or codes, does not invalidate an enactment actually adopted by a municipal assembly, whether the rules of procedure were suspended, waived or tacitly ignored. *City of Sedalia v. Scott,* 104 Mo.App. 595, 78 S.W. 276, 280 (1904); 56 Am. Jur.2d *Municipal Corporations* § 156 (1971); McQuillin, *Municipal Corporations* § 15.09 (1981). Moreover, as a general rule courts will not invalidate the approval of the voters on referendum because of procedural errors occurring during the legislative enactment of the referendum. *Brown v. Morris,* 365 Mo. 946, 290 S.W.2d 160 (Mo.banc 1956); 42 Am.Jur.2d *Initiative and Referendum* § 55 (1969).